T.C. Memo. 2004-222


UNITED STATES TAX COURT


ZACARIAS LAPID AND MA DELAILA LAPID, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18544-02.                    Filed October 4, 2004.


Gary R. Dettloff, for petitioners.

Gregory C. Okwuosah, for respondent.


MEMORANDUM OPINION


HOLMES, Judge:  The petitioners, Zacarias and Ma Delaila Lapid, are an extremely hardworking couple who used some of their savings to buy five condominiums in Florida and one house in Nevada.  These investments were not profitable, and the Lapids contest the Commissioner's characterization and disallowance of the resulting losses as passive activity losses within the

meaning of section 469.[1]  The case turns on whether the Lapids were "material participants" in their various real estate ventures.

## Background

The Lapids were Michigan residents when they filed their petition.  Mrs. Lapid is a cardiac nurse on the graveyard shift at a hospital in Troy, Michigan, and Mr. Lapid is a machinist at an engineering company there.  They both work exceptionally long hours.  Throughout 1999 and 2000, Mr. Lapid averaged between 9 to 10 hours a day and Mrs. Lapid worked 12 hours a night.  Their work paid off, and they saved enough money to become investors.

By 1999, the Lapids owned five condominiums in Florida. Four were units in two different condominium hotels near Orlando--a Day's Inn and a Howard Johnson.  Condominium hotels look like any other hotel.  Guests check in, get a room, have full run of the hotel, and then check out.  The hotels have people manning the front desk, and others working as housekeepers and janitors.  The major difference between condominium and regular hotels is that each room in a condo hotel is owned by an investor who typically is not affiliated with the hotel's management company.  The brand name on the hotel (e.g., Day's Inn, Howard Johnson), is the management company's, not the

---

[1] Section references are to the Internal Revenue Code of 1986, as amended.

investor's, so guests have no idea who owns their rooms.

Onsite hotel management ran the day-to-day operations of the hotel condos. These included checking in guests, making routine repairs, cleaning the units, and preparing financial statements and summaries for the unit owners. The companies kept a portion of the revenues collected as payment for their work.

The Lapids' other Florida condominium was a unit in a complex named The Hacienda del Sol, which they rented out to longer-term tenants. Mrs. Lapid first employed a manager, whom she fired due to "integrity problems" (the evidence does not show when), and she has managed the property herself since then. In late 2000, the Lapids bought a house in Henderson, Nevada to add to their portfolio. Mrs. Lapid also managed this property, with the help of some of her Nevada relatives. She and her husband would periodically visit both the house and the condo to inspect them and to make small repairs, though she contracted out larger ones.

Even though Mrs. Lapid was a full-time nurse, she credibly testified that she was able to devote a great deal of time to her real estate activities. While her supervisors expected her to be available in case of an emergency, they also needed her to be quiet so that her patients could sleep. Thus, most of her time at the hospital was spent monitoring her patients by watching machines while at her station. To allow the nurses to maintain a

quiet atmosphere yet stay awake, her supervisors encouraged them to read while on duty. This enabled Mrs. Lapid to spend two to three hours a night going over financial statements and summaries the management companies had sent her. Other hospital staff often joked about Mrs. Lapid and her briefcase stuffed with paperwork, and she introduced into evidence samples of what she reviewed. These included:

- owners' summary reports,

- maintenance reports,

- condo associations' audited financial statements,

- inspection summaries,

- condominium newsletters; and

- condominium associations' annual meeting and election materials.

Petitioners filed joint returns in 1999 and 2000. In 1999, they claimed a total loss of $21,021 from the Florida properties. In 2000, they claimed a total loss of $25,000 from the Florida and Nevada properties combined. Respondent denied these losses and sent them a notice of deficiency. Petitioners filed a timely petition and their case was tried in Detroit.

## Discussion

The Code allows taxpayers to deduct most business-related and profit-seeking expenses under sections 162 and 212; however, section 469 limits these deductions when they arise from "passive activities." Passive activities include both (1) trade or

business activities where the taxpayer does not materially participate, and (2) rental activities. Sec. 469(c)(1) and (2). The notice of deficiency that respondent sent the Lapids disallowed their losses precisely because respondent called all their investments "rental activity," and so *per se* passive.

Petitioners argue that none of the Lapids' investments were rental activities, and that the amount of time that Mrs. Lapid poured into monitoring these investments made her a material participant--transforming what would ordinarily be a passive activity into an active one. This means, they argue, that the passive activity rules do not apply and the Lapids' losses should be allowed.

Respondent now agrees that at least the hotel condos were trade or business activities, but he still asserts that most of Mrs. Lapid's time should not count toward whether she materially participated. However, the bulk of his argument now is metronomically (twelve times in the fourteen pages of the reply brief) calling Mrs. Lapid's testimony "vague, uncorroborated, and self-serving."

The parties point us in the right direction at times but, unlike them, we divide this case in two. First, we analyze the Lapids' hotel condos as a trade or business. We then decide whether what Mrs. Lapid was doing counts as "material participation." Second, we look at the Lapids' nonhotel condo

and house to see whether the Lapids' losses on them were all passive. Our analysis shows that the problem with Mrs. Lapid's testimony is not that it's self-serving, but that it is testimony which even if credible doesn't help either half of her case.

A.   The Hotel Condos

The parties now agree that the hotel condos were rented to customers for periods averaging less than seven days. And, as petitioners point out, under the regulations a rental activity does not include an activity where the average period of customer use is seven days or less. Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988); see also Scheiner v. Commissioner, T.C. Memo. 1996-554. We must treat the hotel condos as a trade or business.

Whether a loss from a trade or business is a passive activity loss generally depends on whether the taxpayer claiming the loss "materially participated" in that trade or business. We may not treat a taxpayer as a material participant unless his involvement is regular, continuous, and substantial. Sec. 469(h)(1).

The regulations allow us to treat petitioners as "material participants" if, but only if, they meet one of seven tests listed in the regulation. The Lapids argue that they meet four:

- Participation in the activity for more than 500 hours per year. Sec. 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988);

- Participation in the activity for more than 100 hours, and a showing that no other individual participated in the activity more than the taxpayer.  Sec. 1.469-5T(a)(3), Temporary Income Tax Regs., <u>supra</u>;

- Participation in the activity for more than 100 hours, plus participation in all significant trade or business activities that totals 500 hours.  Sec. 1.469-5T(a)(4), Temporary Income Tax Regs., <u>supra</u>; and

- Participation in the activity on a regular, continuous, and substantial basis during the year.  Sec. 1.469-5T(a)(7), Temporary Income Tax Regs., <u>supra</u>.

This last test is the one that most closely follows the language of section 469(h)(1).  However, in <u>Mordkin v. Commissioner</u>, T.C. Memo. 1996-187, we concluded that section 469's material participation standard implied that materiality could be measured by time spent.  We thus upheld the Secretary's decision to build safe harbors letting taxpayers prove material participation by showing they spent a particular number of hours on a particular activity.  <u>Id.</u>

It is not obvious, though, whether a taxpayer in the Lapids' situation has to treat each property as a separate activity when arguing that he has spent the required number of hours participating "in the activity."  So we first ask whether the Lapids' four hotel condos were four activities or only one, or something in between.[2]

---

[2] The regulations make clear that taxpayers generally cannot combine trade or business activities with rental activities. Sec. 1.469-4(d)(1), Income Tax Regs.  As the hotel condos are trade or business activities and the nonhotel properties are rental activities, we cannot combine them to measure whether Mrs.
(continued...)

The regulations guide us by listing five factors:

> (i) Similarities and differences in types of trades or businesses;
>
> (ii) The extent of common control;
>
> (iii) The extent of common ownership;
>
> (iv) Geographical location; and
>
> (v) Interdependencies between or among the activities * * * [Sec. 1.469-4(c)(2), Income Tax Regs., supra.]

Petitioners' hotel condos are all part of a similar trade or business, are owned by the same people, and are all near each other in Florida. Even though there does not seem to be much interdependence between them, we assume that all four are one activity.

The key problem in petitioners' case, then, is whether they can prove that they spent the required number of hours participating in the activity even if all the hotel condos together are a single activity. The regulations state that taxpayers can prove the extent of their activity through any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra at 5727. "Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means." Id.

---

²(...continued)
Lapid spent the time required to claim the benefit of the safe harbors listed in the regulation.

However, the same regulation also tells us not to count certain activities in deciding whether petitioners have spent enough time on their activity for their participation to be material.  The most important of these exclusions is time spent on investment activities, which does not count unless the taxpayer is directly involved in the day-to-day management or operations of the activity.  Sec. 1.469-5T(f)(2)(ii)(A) and (B), Temporary Income Tax Regs., supra at 5727; see also Mordkin.  According to the regulations, investment activity includes:

1.    Studying and reviewing financial statements or reports on operations of the activity;

2.    Preparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and

3.    Monitoring the finances or operations of the activity in a non-managerial capacity.

Sec. 1.469-5T(f)(2)(ii)(B)(1) through (3), Temporary Income Tax Regs., supra.

While Mrs. Lapid testified that she spent many hours every night studying and tracking her investments, the evidence she submitted shows that she was actually just reviewing financial statements and reports on operations.  Because the regulation specifically defines such monitoring as investment activity, we cannot include that time in calculating whether she met the material participation standard in three of the safe harbors she is aiming for.  This is true despite our belief that Mrs. Lapid

did indeed spend a lot of time tracking her properties.
Regardless of whether we believe Mrs. Lapid's testimony (or think
it "vague, uncorroborated, and self-serving"), we cannot consider
the vast majority of the hours she spent monitoring her
investments in deciding whether she was a material participant.

Unable to count the hours that Mrs. Lapid spent on
investment activity,[3] the petitioners' claim to the loss on their
hotel condos quickly collapses. Though we believe that the
Lapids did at least occasionally visit the condos, the record is
devoid of any evidence that they spent anywhere near 500 hours
doing so. That the hotels did the routine onsite work of
property management undermines the Lapids' ability to show any
significant amount of time that would count as "participation" in
the activity. And they completely failed to compare the time
they spent with the time spent by individuals actually onsite.

Petitioners do claim, based on all the facts and
circumstances, that Mrs. Lapid participated in the activity on a
regular, continuous, and substantial basis during the year. See
sec. 1.469-5T(a)(7), Temporary Income Tax Regs., supra at 5726.
The regulations state that the taxpayer's hours spent on
management can count under this test only if no other person is

---

[3] While the regulations permit us to include Mr. Lapid's
time on these activities, sec. 1.469-5T(f)(3), Temporary Income
Tax Regs., supra at 5727, petitioners presented no evidence that
he spent any time on them beyond performing minor repairs.

compensated for performing management services related to that property. Sec. 1.469-5T(b)(2)(ii)(A), Temporary Income Tax Regs., supra at 5726. The record before us, however, contains reams of evidence showing that the hotels withheld some of the Lapids' revenues as payment for providing services such as cleaning, check-ins, and the like. So even if Mrs. Lapid did substantially manage the hotel properties, this catchall test provides no benefit to her.

For these reasons, we must find that the petitioners did not materially participate in the trade or business of the hotel condos. These activities were passive, and so we reject petitioners' challenge to the disallowance of their related loss deduction.

B. The Nonhotel Properties

The nonhotel condo and Nevada house are both rental activities rather than a trade or business, so we must analyze whether they are passive activities under section 469(c)(2). The material participation standard ordinarily does not apply to rental activities. Sec. 469(c)(2). But it does become relevant when petitioners argue that one of them is a "real estate professional."

Petitioners did submit a proposed amended tax return that changed Mrs. Lapid's occupation from "R.N." to "Real Estate Manager." They failed to raise the point in their briefs,

however, and we therefore conclude that they have abandoned it. Lunsford v. Commissioner, 117 T.C. 183, 187 (2001); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).

Even if we didn't, the argument lacks merit. To be a real estate professional under section 469(c)(7), the taxpayer must (among other requirements) have "materially participate[d]" in real estate trades or businesses for at least 750 hours in the tax year. Sec. 469(c)(7)(B)(ii). But "material participation" has the same meaning here as described above. See sec. 1.469-9(b)(5), Income Tax Regs. So the time Mrs. Lapid spent on investment activities would still not count toward the 750-hour requirement. We therefore find in the alternative that she is not a real estate professional for purposes of section 469(c)(7).[4]

As the petitioners brought up no other arguments,[5] we find that the nonhotel properties are a passive activity and any

---

[4] And even if Mrs. Lapid were a real estate professional for purposes of section 469(c)(7), we would have to consider each of her real estate rental activities separately, sec. 469(c)(7)(A)(ii), unless she elected to combine them into a single activity, sec. 1.469-9(g)(1), Income Tax Regs. As we find that Mrs. Lapid is not a real estate professional, these rules do not apply, and we need not consider whether she made the required election.

[5] While petitioners brought up no other arguments, respondent did mention section 469(i) on brief. This section allows a maximum $25,000 deduction for passive activity losses connected with rental real estate. Petitioners, however, fail to qualify for this deduction because their modified adjusted gross income (i.e., their adjusted gross income computed without regard to their claimed losses) was too high.

related losses are not deductible.  Sec. 469(a)(1)(A).  Since the petitioners' real estate activities generated only passive losses,

<u>A decision will be entered for respondent</u>.